The next case is in re sharp. Rachel could be appearing for appellant and David Carl Hill appearing for appellee.  All in favor say aye. All right, Ms. Kadeavy, you may approach and would you like to reserve any time for reply? Two minutes. And you may proceed when you're ready. Good morning, Your Honors. My name is Rachel Kadeavy, attorney for Appellant for Trivian Design, LLC. The central issue in this case is whether Ms. Sharp retained the right to redeem her property at the time her final bankruptcy broke. Since Ms. Sharp failed to redeem within the time prescribed under state law or the extension of time under Section 108B, we respectfully submit that the answer to that question is no. Exercising a right of redemption created under state law constitutes the curing of a default or performing any other similar act falling within the scope of Section 108B. Here Ms. Sharp had until the original redemption deadline under state law of July 15, 2023 or the extended deadline of September 10, 2023 to redeem the property. Since Ms. Sharp failed to redeem the property by the original deadline or the extended deadline, the right of redemption was no longer a part of the bankruptcy estate at the time her final plan was confirmed. Does she not have any ability to affect anything through the remaining provisions of the bankruptcy code? No, Your Honor. Why is that? And that gets us into Fairbanks. Yes. The reason for that is that Ms. Sharp's legal title interest in the property terminated at the end of the redemption period, which was extended under Section 108B by 60 days from her date of filing. So the final date that she had to redeem the property was September 10, 2023. At that point, her legal title interest in the property terminated. She no longer had equitable interest in the property as that passed to a retrieval at the foreclosure sale. And what is your case law or statute for that provision? And first, I guess, when you say that, are we looking solely to Washington law or are we also looking separately to the bankruptcy code? Your Honor, the Ninth Circuit or the Ninth Circuit BAP has not addressed this issue squarely. Every case that we've cited to in our briefing that has confronted this issue has interpreted 108B as a firm deadline by which the debtor has to confirm the plan. When you say confirm the plan, you mean... To redeem the property, excuse me, Your Honor, and for it to still be considered a right of the bankruptcy estate. Just to clarify, then, if she had filed a plan before the 60-day period but didn't provide that the payment would be made within the 60-day period, that wouldn't be sufficient? No, Your Honor. The redemption needs to take place within the extended 60-day period under Section 108B. Despite what Apelli contends, the operative event in this scenario is not... Is the termination of the redemption period and not the delivery and recording of a deed. Apelli argues that since a sheriff's deed was never recorded, Apelli continues to possess rights in the property which continue into the bankruptcy estate until such recording. The bankruptcy court seemed to favor this idea, as you alluded to, it allowed it to analogize to the Fairbanks case. However, the bankruptcy court and Apelli misunderstand the operative events with regard to a judicial foreclosure sale, which we have here. And the redemption statute under RCW 623. So you distinguish Fairbanks on the basis that it's a different mechanism under law that is in play rather than... In this case, rather than what was in play in Fairbanks? Correct, Your Honor. Fairbanks did not involve a redemption period at all. Section 108B simply wasn't an issue and it wasn't addressed by the court. It would involve the recording of a deed transferring title of the property after a foreclosure sale. In Fairbanks, yes. The debtor still had a legal interest in the property. So that's why the bankruptcy court was able to address her claim in that way, in the way it did. So what is the distinction here? You're saying that upon the expiration of the extended time to redeem the property, the legal interest, which did pass into the estate, did what? It terminated, Your Honor. It requires the actual delivery of the deed. Right. But the operative events in a judicial foreclosure sale when there is a statutory redemption period is not the recording of a deed. Again, that's the difference between the legal and the equitable, right? Because something did pass into the estate and you had the redemption. It stopped. But as in the nonjudicial, that actually the sale was gaveled. It did not get the deed and something passed into the estate. And Fairbanks alludes that something could be done. Question about what that something is. So why in this case where you still it has concluded redemption is off the table under state law, but bankruptcy generally allows for the payment of a debt. So why why couldn't the debtor in this instance try to save her equity in this house, which appears to be substantial by paying the debt that was due to your client? Right. I understand, Your Honor. But it is our position that the running of the redemption period by the extended deadline under Section 108B was a firm cutoff by which Ms. Sharp had to redeem her plan. Neither Ms. Sharp nor the trustee felt a motion to redeem by the deadline there. There's case law, specifically Title Max, that holds that a bankruptcy estate is not static. It can expand or contract depending on state law. The state law issue here, again, was the running of the redemption period. So while Ms. Sharp did have the right to redeem at the time she initially filed her petition, that right terminated at the end of the extended deadline for the redemption period. So and I think Mr. Judge Baker's question was directed to whether or not your client is actually a creditor of her estate. That is a good question, Your Honor. He is a third party purchaser of the property. It's our position he's not a creditor. He's simply an interested party here. And who was the creditor? The creditor would have been the Homeowners Association. And was that claim satisfied? It was by Vitruvian, yes, Your Honor. They paid the dues that were owed. And then once that sheriff's sale took place, they had one year to redeem the property. So what passed into the estate was not the claim of Vitruvian against the debtor. It was the redemption right? Correct, Your Honor. And is that, you think, distinguishing this case from the Franklin, from the Fairbanks case? Yes, that is the distinguishing point between this case and Fairbanks. In the Fairbanks case, the actual interest in the property moved in. She retained title until the transfer of deed occurred? That is correct, Your Honor. And in this case, we're dealing with only the right of redemption? Only the right of redemption, Your Honor, yes. What title passed in Fairbanks to the estate? The title, I believe in Fairbanks, the debtor retains legal title to the property. There was no redemption at issue. But I understand there's no redemption, but it's legal title that passed to the estate. In Fairbanks, correct. And in here, you're saying legal title did not pass? At the time the petition was filed, yes. Legal title remained in the debtor, but that legal title was terminated at the end of the redemption period. By operation of law is what you are talking about? By operation of law, yes. Section 108B. Well, that's the extension, but then... Yes, sorry. By operation of law, the Washington Redemption Statute RCW 623, yes. And to be clear, your position is that there is nothing, unlike Fairbanks, there was nothing that this debtor could have done, which means that 1322 does not apply at all. It does not apply, Your Honor. The debtor foreclosure sale took place, so debtor was barred from carrying and maintaining under 1322. B3, B5, by operation of 1322C1, I don't think that is in dispute, Your Honor. Could she have, on the 62nd day, if she tendered the $70,000 that was owed rounding, wouldn't that have satisfied that debt? Yes, Your Honor, but again, that was past the redemption period, so Ms. Sharp could no longer redeem the property under state law or the extension of time under section 108B. She could not do it under the bankruptcy code? No, Your Honor. Section 108B acted as a firm deadline for her redemption right to expire. That is that she could compel the creditor to accept the money in lieu of taking title of the property. Yes, Your Honor, and again, this case is very distinguishable from Fairbanks, but Fairbanks did use the language or some other arrangement that the creditor is willing to accept. Here, Vitruvian, you know, this was essentially thrust on them to accept this payment in lieu of title to the property. So I think that's an important distinguishing point to make as well. Lastly, I just want to point out to Your Honors, as the parties have jointly stipulated to, counsel for Apelli retains the funds paid by Apelli's father, and the surplus funds disperse from the Mason County Superior Court in his trust account. Even though Apelli's counsel added redemption language to the order granting dispersal of the funds, I want to point out that no redemption has been effectuated. A Mason County sheriff has not processed any redemption, a certificate of redemption has not been issued by the sheriff, and that issue is pending resolution of this appeal. And your client hasn't accepted payment of any of the funds? No, Your Honor. And that's the fundamental point here. Your client believes it bought the property and it wants what it bought. Correct, Your Honor. For the foregoing reasons, I respectfully ask that this Court find in favor of appellant and reverse the bankruptcy court's denial of Aaron Sharpe's Chapter 13 plan. We also ask that you remand, with instructions to the bankruptcy court, authorizing Vitruvian to obtain the sheriff's deed and possession of the property through appropriate state court processes, and the release of funds in Apelli's counsel's trust account to Apelli. Thank you, Your Honor. I'll yield the rest of my time for rebuttal. Thank you very much. Counsel? Good morning, Your Honors. David Hill, appearing on behalf of Aaron Sharpe. In listening to the argument thus far, the question then really comes down to which rule do we apply? Do we apply the strict requirements of 108C, or do we look to the broad, more generous language and appropriate language of 1322? Well, I think you're absolutely right. Let's talk about 1322. Because why doesn't 1322C1 really... End the discussion. Yeah. That's a good question. 1322C1 says that a default with respect to or that gives rise to a lien on the debtor's principal may be cured under paragraphs 3 and 5 until such the residence is sold at the foreclosure sale that is conducted in accordance with applicable non-bankruptcy law. So then the question is what constitutes the completion of that sale process? I think it's even a little more complicated in that we recognize that Fairbanks is not published, but why would we turn from the clear language of Fairbanks that says as a matter of bankruptcy law, that happens when the sale is conducted, not when title transfers, which seems to continue the line of cases from Oregon and Hurt and Breaker pre-C1. So why is that an issue? Why are we looking... Fairbanks seems to say strongly that's a matter of federal bankruptcy law, not state law. However, we have to include state law because state law governs the transfer of title to property. No, we're not worried about transfer of title. We're worried about what you can do in bankruptcy. And what you can't do is cure. You can't cure under B3, you can't cure and maintain under B5. There's nothing to cure and maintain here. So if you can't cure, what can you do? Then we fall back onto the general approach that this court took in the Fairbanks case and said, OK, she can't cure because in Fairbanks she couldn't cure because the sale had taken place. Because it had happened, but the deed had not transferred. Exactly. So there was no cure available to her. She had to come up with something else. And I noted that the court recognized that there was a possibility that she could. However, the court was somewhat reluctant to really get excited about it. I mean, her plan, her opportunities to resolve this through her plan seemed questionable at best. But the court, you sent it down back to Judge Lynch to make that determination. But it said that the only remaining cure or only remaining remedy had to be with the consent of the creditor. That's not how Judge Lynch interpreted it in our case. And that becomes a matter of parsing terms. Well, didn't you seek to cure? Excuse that. Didn't your plan seek to cure? Yes. And it can't under C-1. Well, it can if we take it to the more broader approach in Fairbanks. C-1 is clear that you can't cure if the sale occurred. Under Fairbanks, the sale has occurred. Therefore, C-1 suggests that you cannot cure. And you're admitting, and I think it's right, that you're trying to cure the lack of redemption. We can get into whether that's a claim or not, but it still seems like you're trying to cure something that did not happen.  Plus, this isn't a lien anymore, is it? Well, it is a claim against property. Why is that? They're not making a claim. They don't want to make a claim. Counsel is very clear that they want the property. You get to keep your money. The code is pretty broad in the definition of a creditor claim. I mean, it can be anywhere from the standard credit card debt to a mortgage to any interest of a third party that, whether it's a nonrecourse debt or not. But that's somebody wanting to be paid. We have a situation where this entity does not want to be paid. They do not want any money. And the question is, can you force them to take money to affect something? And I'm not hearing how you can force them to take $70,000 to revest the debtor and her equitable interest. Redemption, I think, is gone. I mean, you did not timely affect that. So you have to look for some relief somewhere else. That seems to be 1322, except 1322 C1 says you can't cure, which seems to be what you're trying to do. Although, if we look at the Frazier case, which is a BAP case, in that case, it involved a real estate contract forfeiture. And under the forfeiture rules, I believe in Montana, if I'm not mistaken, once all the steps were taken, it was just a matter of completing the process. And this court, in that case, looked at the interplay between 108 and 1322 and determined that because 1322 is more specific to bankruptcy law, to the Chapter 13, that takes priority over the 108. Because 108 is a matter of general provisions, rather than very specific to Chapter 13. Had there been a foreclosure sale? In the Frazier case. Well, no, because there was a different set of rules. That gets you out of the problem, which is 322 C1, doesn't it? No, because in Frazier, the debtor had a certain time limit to meet certain obligations. And that's where 108 is very broad. But you see, there's the problem I'm having with the legal construct. There was a debt that the creditor had and had a right to payment. It still existed, did not do that. And whatever opportunity that the debtor had under the real estate contract, it may have expired, but then you're still under 1322. Here, 1322 C says you are not. However, well, in the Frazier case, the argument was that 108, the terms of 108 includes contracts. But Judge Lynch essentially recognized that the time had gone for redemption. You cannot redeem. And he had indicated, I thought, that you couldn't cure. He did create basically another option, and that's, well, essentially, he did allow us to cure by saying, okay, if you pay this amount of money, which should be noted as substantially more than the amount necessary. And that is noted, to be fair. We do note that. We're not unsympathetic. We're just struggling to find the legal aspect of this. And I think it comes down to kind of the broad construct of Chapter 13. The idea of Chapter 13 is to allow a debtor to rehabilitate, but in the process, to not deny the creditors the payment or recovery of what they've put out in this case. And that's what we're doing. We're more than compensating Vitruvian for their expenditures in bidding at the foreclosure sale, paying their utilities. Aren't you really suggesting that if the state law doesn't permit it and the bankruptcy code doesn't permit it, but it just doesn't seem fair and you're willing to pay, the court ought to affirm that transaction and allow you to do it either way, even though? Well, I think it comes back to the interpretation of 1322C1. How broad do we take that? Because it says if the property was sold, what is the sale process? And our contention is that the process is not completed until a sheriff issues that deed. But you've got two decisions from the BAP prior to C1 saying that's not the situation in Breaker and Hurt. And then you have C1, and then you have Fairbanks. I mean, how is that still an open question for us? Well, Richter, as Judge Lynch observed, is applicable to California law, but Washington law is a little different. That's as to the title, not what you can do in bankruptcy. That's Fairbanks. Yeah. Right. And I think those two concepts get confused or conflated. We're not talking about title. Title is the next step. But if you can't do anything in bankruptcy because of C1, what is there to be done? So we go back to who's the owner of the property? A title in Washington is passed by deed. Ms. Sharp continues to hold the deed to the property. And so that's an asset of the bankruptcy estate, and the bankruptcy court has a right to administer that asset. But you can't pay them because they don't have a claim. Well, it's a non-re- They do have no right to payment. You have the right to pay, at least you did under the redemption. But I think Judge Gannon indicated, what makes them required to accept that payment? Because it's not redemption.  And then we're struggling with 1322. So what is the legal basis that you can compel them to take the 70,000 plus and relinquish any legal or equitable title that they have? One case, and I didn't cite that, and so I'm not going to address it, since I didn't give counsel advance notice of this. But there's one approach to this, and that was to look at the whole concept of comparing a judicial foreclosure and the relationship between the buyer and the judicial foreclosure versus the owner of the property to that of a mortgagee or in a mortgagee. I suppose, and taking that approach to that, saying, okay, if we consider Vitruvian as a non-recourse mortgagee by virtue of the fact that they now bought the debt, then the bankruptcy court can look at that and apply 1322 and allow that to proceed on. So I grant this is a tough case. The question, I think, before the court is, based upon Judge Lynch's interpretation of the law, was his interpretation allowable? And if so, then due deference should be given to his decision, both as to denying motion for relief from state and confirming a plan which, as I pointed out, more than adequately compensates Vitruvian for the money that they've expended. Thank you. Thank you, Your Honor. Counsel, you have about four minutes left, just under. Thank you, Your Honor. We believe the law is clear here. The debtor was barred from curing and maintaining under Section 1322C1, and the period by which she had to redeem the property expired under state law by operation of RCW 623 and the extended deadline under Section 108B of the Bankruptcy Code. Debtors' Counsel does talk about the equities here, but our Supreme Court is clear that the equitable powers of this court cannot override specific code provisions. That's true, but it seems almost too simplistic to say the reason you filed bankruptcy is to reorganize your financial affairs, and that's what Judge Lynch seems to have done, right? Yes, Your Honor, yes. To be fair, it seems like your client's buying a lot of equity, and however you think of that, that's the situation. And now the debtor has come up with sufficient funds to make payment in full, and Judge Lynch was very clear that it had to be completely in full, and your client's not accepting it. That's kind of where we are. But bankruptcy generally allows that to be done, and that's the problem we're having with this. Yes, Your Honor, and the filing of bankruptcy did give the debtor breathing room in that regard. She had an extended deadline of 60 days from the date of filing to pay the redemption price. Under the redemption, right? Yes. That's under redemption. Under redemption, correct, Your Honor. But bankruptcy also gives, generally gives Chapter 13 debtors three to five years to do it. So why doesn't the debtor have the three to five years? Yes, Your Honor, I think you correctly pointed out that Vitruvian does not have a claim that could be addressed by the plan. They are not a creditor in this action. They are a third-party purchaser. In fact, legislative history for Section 1322C1 specifically says that that provision is meant to protect third-party purchasers like Vitruvian. And, again, going back to the language of Fairbanks, those alternative options were something that the creditor, again, Vitruvian isn't a creditor, but something the creditor would be willing to accept, not something forced upon them. So for the foregoing reasons, we do respectfully request that you find in favor of appellant and grant the relief that we're seeking. Thank you so much. Thank you. All right, thank you both for a very interesting oral argument. This is a difficult case. We appreciate your comments and analysis. The matter will be submitted, and, again, we will try to endeavor to get a decision out as quickly as possible on that. We have one other matter, but that matter is submitted on the brief. So, Madam Clerk, I believe that concludes our oral argument and will be adjourned. Thank you very much. Thank you both. All rise for the recess. Thank you all for coming.
judges: Brand, Spraker, Gan